EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Departamento de Hacienda<br><br>Recurrido<br><br>v.<br><br>UGT-Comité Timón de Agentes de Rentas Internas (COTIARI)<br><br>Peticionario | Certiorari<br><br>2020 TSPR 17<br><br>203 DPR _____ |

Número del Caso: CC-2018-664

Fecha: 21 de febrero de 2020

Abogado de la parte Peticionaria:

    Lcdo. Edwin Rivera Cintrón

Abogada de la parte Recurrida:

    Lcda. Limary Rodríguez González

Materia: Derecho Laboral – Conforme a la Estipulación suscrita entre el Gobierno de Puerto Rico y varias uniones sindicales, no están paralizados bajo el Título III PROMESA, los pleitos sobre quejas, agravios y arbitrajes al amparo de los convenios colectivos vigentes, donde el remedio consista en la reinstalación del empleado unionado a su puesto.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Departamento de Hacienda<br><br>Recurrido<br><br>v.<br><br>UGT-Comité Timón de Agentes de Rentas Internas (COTIARI)<br><br>Peticionario | CC-2018-0664 | *Certiorari* |

El Juez Asociado señor ESTRELLA MARTÍNEZ emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 21 de febrero de 2020.

El Gobierno de Puerto Rico y varias uniones sindicales, incluyendo la aquí peticionaria, suscribieron una estipulación avalada por la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico para identificar determinados casos que no están sujetos a la paralización automática que de ordinario provee el Título III de PROMESA, infra. Ante el dictamen recurrido emitido por el Tribunal de Apelaciones, debemos ejercer nuestra jurisdicción concurrente para examinar si la impugnación de determinado laudo de arbitraje promovido por la peticionaria forma parte de esta estipulación y, por ende, no está paralizada.

Con ello en mente, examinemos el origen de la controversia que nos ocupa.

I

La Unión General de Trabajadores de Puerto Rico-Comité Timón de Agentes de Rentas Internas (UGT) suscribió un Convenio Colectivo con el Departamento de Hacienda, de conformidad con la Ley Núm. 45-1998, conocida como la Ley de relaciones del trabajo para el servicio público de Puerto Rico, 3 LPRA secs. 1451-1454a. Como parte del acuerdo, el Departamento de Hacienda reconoció a la UGT como la representante exclusiva para manejar y tramitar, entre otros, los asuntos relacionados a las quejas y agravios de los empleados cubiertos por el Convenio Colectivo. Esto incluye, en lo pertinente, la facultad de la UGT para incoar procedimientos de arbitraje en representación de sus miembros ante la Comisión Apelativa del Servicio Público (CASP) y, de ser necesario, solicitar la revisión de los laudos de arbitraje ante los tribunales. Los puestos de Agente Especial Fiscal I-IV forman parte de la Unidad Apropiada cubierta en el Convenio Colectivo y, por consiguiente, están sujetos a los derechos y obligaciones que emanan de éste.

A finales del año 2013, la Sra. Annette Colorado Suárez (señora Colorado Suárez) comenzó a laborar en el Departamento de Hacienda como Agente Especial Fiscal I. Sin embargo, a poco menos de un año, el Departamento de Hacienda la destituyó del puesto tras concluir que violentó el reglamento de normas de conducta aplicable. En respuesta, en octubre de 2014, la UGT impugnó la destitución de la señora Colorado Suárez mediante una solicitud de arbitraje de quejas y agravios ante

la CASP. Culminados los trámites de rigor, dicho foro rindió un laudo de arbitraje en el que confirmó la destitución. En desacuerdo, la UGT solicitó la revisión del laudo de arbitraje ante el Tribunal de Primera Instancia, donde planteó que era contrario a Derecho, toda vez que alegadamente contravino varias cláusulas del Convenio Colectivo. No obstante, en marzo de 2017, el Tribunal de Primera Instancia confirmó el laudo de arbitraje. Inconforme con lo dictaminado, el 28 de abril de 2017, la UGT presentó un recurso de certiorari ante el Tribunal de Apelaciones.

Pendientes los trámites ante el foro apelativo intermedio, el 3 de mayo de 2017, la Junta de Supervisión y Administración Financiera para Puerto Rico instó ante la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico (Corte de Distrito) un procedimiento a nombre del Gobierno de Puerto Rico al amparo del Título III de PROMESA. Como resultado, el Procurador General compareció ante el Tribunal de Apelaciones para anunciar que el pleito de autos estaba paralizado en virtud de la sección 301(a) del Título III de PROMESA, que a su vez incorporó las Secciones 362 y 922 del Código Federal de Quiebras referentes a las paralizaciones automáticas de los pleitos contra el deudor y su propiedad.[1] En cambio, la UGT planteó lo contrario y argumentó que, por tratarse de un pleito obrero-patronal en el que opera un

_____

[1] Aviso de paralización de los procedimientos por virtud de la petición presentada por el Gobierno de Puerto Rico bajo el Título III de PROMESA, apéndice del certiorari, págs. 51-54.

Convenio Colectivo entre las partes, tanto el Código Federal de Quiebras como la jurisprudencia interpretativa federal exceptuaban al mismo de la paralización automática.[2] Trabada la pugna, en septiembre de 2017, el Tribunal de Apelaciones determinó que el pleito no estaba paralizado, pues razonó que no involucraba una reclamación monetaria. De ese modo, y tras recibir el alegato en los méritos del Departamento de Hacienda, el foro intermedio sometió el caso para su disposición final.

Posteriormente, en abril de 2018, mientras pendía la adjudicación del caso, la UGT presentó una <u>Moción informativa al expediente</u> a fin de poner en conocimiento al foro intermedio sobre la existencia de una estipulación que recientemente había suscrito el Gobierno de Puerto Rico con varias organizaciones sindicales, entre las que se incluía a la UGT.[3] Explicó que mediante esa estipulación, suscrita el 6 de marzo de 2018 y aprobada por la Corte de Distrito, se acordó exceptuar de la paralización automática ciertos pleitos laborales sobre arbitraje de quejas y agravios presentados al amparo de convenios colectivos vigentes, para que pudieran continuar su marcha ante los foros adjudicativos correspondientes. Además, la UGT informó que el 2 de abril de 2018, la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF) -por encargo del Gobierno de Puerto Rico- emitió la Orden Administrativa OA-2018-2 a los fines de

---

[2]Véase <u>Réplica</u> en Íd., págs. 67-78.

[3]Íd., págs. 112-113.

instituir el protocolo para poner en vigor los acuerdos recogidos en la estipulación.

Por su parte, el Procurador General reconoció la existencia de la estipulación y de la Orden Administrativa emitida por la AAFAF. También aceptó que el Tribunal de Apelaciones ya había resuelto el asunto en definitiva desde el año pasado, cuando la decisión de continuar con el pleito advino final y firme. No obstante, aprovechó su comparecencia para reiterar su posición en torno a que correspondía a la Corte de Distrito dirimir cualquier impugnación a la paralización automática establecida en el Título III de PROMESA.[4]

Así las cosas, el 19 de junio de 2018, el Tribunal de Apelaciones notificó una sentencia mediante la cual paralizó el pleito, tras concluir que:

> [a]l evaluar nuevamente el aspecto relacionado con la paralización, según argumentado por las partes, y a la luz de los pronunciamientos recientes del Tribunal Supremo, entendemos que el caso ante nuestra consideración, el cual podría conllevar la erogación de fondos del caudal de quiebra que, en estos momentos están protegidos por la paralización automática, está paralizado.[5]

Como resultado, el foro intermedio ordenó el archivo administrativo del caso hasta tanto concluyeran los procedimientos ante la Corte de Distrito u otra cosa dicho

---

[4]Véase Segunda moción en cumplimiento de Orden, Íd., págs. 156-157.

[5]Sentencia, Íd., pág. 166.

foro dispusiera.[6]

En desacuerdo, la UGT plantea que el Tribunal de Apelaciones erró al ordenar la paralización de este caso. Sostiene que ese proceder no tan solo revoca lo que el propio foro ya adjudicó de modo contrario y final, sino que también conflige con la estipulación autorizada por la Corte de Distrito y la Orden Administrativa que a los efectos emitió la AAFAF. Evaluados los planteamientos del recurso promovido, expedimos el auto de certiorari y concedimos término a la parte recurrida para que presentara su alegato.[7] Como nunca lo hizo, disponemos de la controversia sin el beneficio de su comparecencia.

Reseñados los incidentes fácticos del caso, abordemos en segundo orden el marco jurídico que gobierna el asunto ante nos.

## II

### A.

Como se conoce, el 3 de mayo de 2017, el Gobierno de Puerto Rico presentó una petición al amparo del Título III de PROMESA, 48 USC sec. 2101 et seq.[8] Con ello también entró en vigor la consabida paralización automática de aquellos pleitos

---

[6]La jueza Fraticelli Torres disintió. Entendió que la estipulación suscrita entre el Gobierno de Puerto Rico y las organizaciones sindicales, incluyendo la UGT, ya contaba con el aval de la Corte de Distrito, por lo que vinculaba a las partes sin que fuera necesario emitir un dictamen ulterior. Íd., págs. 166-167.

[7]Véase Resolución de 28 de enero de 2019.

[8]In Re: Commonwealth of Puerto Rico, 17-03283 (LTS).

que generalmente involucren reclamaciones monetarias presentados -o que pudieron presentarse- contra el Gobierno de Puerto Rico a la fecha de la petición. Véanse 48 USC sec. 2161(a); 11 USC secs. 362 y 922. Esta paralización constituye una de las protecciones básicas que, de ordinario, ofrece el procedimiento de quiebras al deudor, pues tiene como propósito protegerlo de reclamaciones de los acreedores, a la vez que protege a estos últimos de las reclamaciones de otros acreedores. 3 Collier on Bankruptcy, Sec. 362.03 esc. 6 (2019). De ese modo, se intenta preservar el caudal del deudor para que se pueda llevar un proceso ordenado de reorganización.

Ahora bien, en vista de que existen circunstancias exentas de la paralización automática, este Foro ha reconocido unánimemente la jurisdicción concurrente de nuestros tribunales locales para examinar si un pleito está efectivamente paralizado en virtud del Título III de PROMESA. Lab. Clínico et al. v. Depto. Salud et al., 198 DPR 790, 792 (2017) (Per curiam); Lacourt Martínez et al. v. JLBP et al., 198 DPR 786, 788 (2017) (Per curiam). Examinemos la controversia que nos ocupa bajo esa premisa.

**B.**

El 6 de marzo de 2018, el Gobierno de Puerto Rico y varias uniones sindicales y sus afiliadas locales suscribieron ante la Corte de Distrito un documento intitulado Stipulation Between the Commonwealth of Puerto Rico and CBA Counterparties Regarding Certain Grievance and Arbitration

Procedures (Estipulación).[9] Ésta fue aprobada por la Corte de Distrito al día siguiente[10] y, en esencia, allí los suscribientes identificaron una serie de pleitos contra el Gobierno de Puerto Rico que (1) **deben** permanecer paralizados, (2) que **pueden** desparalizarce y (3) que **no están** paralizados. A ese fin, el 2 de abril de 2018, la AAFAF emitió la Orden Administrativa OA-2018-2 para establecer el procedimiento a seguir para tramitar la desparalización de esos pleitos. Examinemos estas categorías de pleitos a la luz de la Estipulación y el procedimiento instituido por la AAFAF.

En cuanto al primer grupo, la Estipulación enumera una serie de pleitos que **deben** mantenerse paralizados bajo el Título III de PROMESA. Estos son:

(1) Toda acción para retar la constitucionalidad de cualquier ley esencial para la implementación del Plan Fiscal del Gobierno de Puerto Rico;

(2) una acción cuyo remedio final impida o sea inconsistente con cualquier ley esencial para implementar el Plan Fiscal; y

(3) los casos en que se solicite un remedio interdictal que impida o contravenga la implementación de cualquier política pública del Gobierno de Puerto Rico o las facultades administrativas de sus departamentos y agencias, salvo en casos donde el objetivo del remedio interdictal sea para la reinstalación de empleados o funcionarios públicos.[11]

La Orden Administrativa de la AAFAF cataloga los pleitos anteriores como "excepciones automáticas" a la Estipulación,

---

[9]Apéndice del certiorari, págs. 124-131.

[10]Véase In Re: Commonwealth of Puerto Rico, 17-03283 (LTS) (Dkt. 2692).

[11]Estipulación, apéndice del Certiorari, pág. 127.

lo que implica que "[s]eguirán sujetos a la paralización automática de PROMESA y no podrán continuar el curso correspondiente ante los foros donde se estén ventilando".[12] Por tanto, se deberá acudir a la Corte de Distrito a solicitar la desparalización de éstos, conforme al procedimiento allí establecido.[13]

El segundo grupo de casos alberga aquellos pleitos que los suscribientes reconocieron que **pueden** afectar el Plan Fiscal, por lo que su desparalización se condicionó al consentimiento del Gobierno de Puerto Rico, quien, a través de la AAFAF, debe informar su decisión por escrito a la unión sindical concernida.[14] Para ello, la AAFAF instituyó el procedimiento a seguir para notificar a una unión sindical cuando crea que el pleito en cuestión debe permanecer

---

[12]Orden Administrativa OA-2018-2, Íd., pág. 136.

[13]En esos casos, la Estipulación establece que: "[s]uch actions shall continue to be subject to the Title III Stay [,] subject to the CBA Counterparties' [uniones sindicales suscribientes] right to file a motion for relief from the Title III Stay for such actions in accordance with the protocol set forth in the Third Amended Notice, Case Management Administrative Procedures [ECF No. 1512-1])". Estipulación, Íd., pág. 127.

[14]Sobre este punto, la Estipulación dispone que: "The Commonwealth and the CBA Counterparties have discussed the potential for certain grievances, arbitrations or similar processes that may affect the fiscal plan for the Commonwealth . . . The Commonwealth and the CBA Counterparties agree that if the Commonwealth believes that a Prepetition Action Affects the Fiscal Plan, the Commonwealth, through AAFAF by its counsel, may send notice to the appropriate CBA Counterparty, by its counsel, identifying the Prepetition Action and providing a brief summary of the manner in which the Commonwealth believes the Fiscal Plan is affected". Íd., pág. 126.

paralizado. La AAFAF le llama a este tipo de pleito "excepción por notificación" y el procedimiento es el siguiente:

(1) Cada departamento o agencia que tenga empleados o funcionarios representados por las Uniones, deberá notificar a la AAFAF, en un término no mayor de 30 días calendario contados desde la aprobación de esta Orden Administrativa, aquellos Casos Identificados que afecten el Plan Fiscal del Gobierno de Puerto Rico, conforme el párrafo Quinto de esta Orden Administrativa;

(2) La notificación a la AAFAF se hará cumplimentando el Formulario de Notificación que se incluye como anejo a esta Orden Administrativa y se hace formar parte integral de la misma. Todo Formulario de Notificación se enviará a la siguiente dirección de correo electrónico: estipulacionuniones@aafaf.pr.gov;

(3) La AAFAF evaluará el Formulario de Notificación e informará a las respectivas Uniones, agencias y departamentos de los casos que afectan el Plan Fiscal del Gobierno de Puerto Rico;

(4) De la AAFAF concluir que algún caso no afecta el Plan Fiscal del Gobierno de Puerto Rico, así lo informará al departamento o agencia que le refirió el Formulario de Notificación correspondiente. Esta Notificación se hará a la persona contacto que se haya designado en el Formulario de Notificación; y

(5) Los departamentos y agencias continuarán con el trámite del caso correspondiente hasta tanto reciban una notificación de la AAFAF ordenándoles que informen al foro competente que el caso está paralizado conforme a la Estipulación.[15]

Asimismo, para identificar un caso que cualifique bajo la "excepción por notificación", la AAFAF dispuso que las agencias y departamentos deberán considerar los siguientes criterios generales al momento de identificar quejas, agravios y arbitrajes o litigios que afecten el Plan Fiscal del Gobierno de Puerto Rico:

_____

[15] Orden Administrativa OA-2018-2, Íd., pág. 138.

(1) Casos que impugnen la relocalización geográfica o de oficina o el movimiento de puesto de empleados dentro de una misma agencia o departamento, o entre distintos departamentos, agencias, corporaciones públicas o instrumentalidades públicas;

(2) casos que impugnen la reclasificación de un empleado de transitorio a regular o permanente;

(3) casos que afecten a una clase de empleados o que afecten a 5 o más empleados; y

(4) casos en que la exposición monetaria del departamento o agencia en cuestión supere los $200,000.[16]

Tal como sucede con los pleitos sujetos a la "excepción automática", los pleitos identificados bajo la "excepción por notificación" también requieren que la parte interesada acuda a la Corte de Distrito a solicitar su desparalización.[17]

Finalmente y de pertinencia a la controversia, la Estipulación también reconoce una tercera categoría de pleitos que **no están paralizados** bajo el Título III de PROMESA y que pueden continuar su marcha, independientemente del foro y la etapa procesal en el que se encuentren. Tal es el caso de los pleitos sobre quejas, agravios y arbitrajes al amparo de los convenios colectivos suscritos entre el Gobierno de Puerto Rico y las uniones sindicales, donde el remedio solicitado consista en la reinstalación del empleado unionado

---

[16]Íd., pág. 139.

[17]A esos efectos, la Estipulación establece lo siguiente: "[U]pon the receipt of the notice from the Commonwealth . . . the grievance or arbitration or similar process shall be stayed and the affected CBA Counterparty may file a motion for relief from the Title III Stay in accordance with the Case Management Procedures". Estipulación, Íd., pág. 126.

a su puesto. Así lo expresa claramente la Estipulación en su primer párrafo al establecer que:

> Subject to the terms herein, the Title III is hereby modified solely to the limited extent necessary **to permit matters arising from prepetition conduct brought under the grievance and arbitration procedures in collective bargaining agreements between the Commonwealth and the CBA Counterparties** [organizaciones sindicales suscribientes], or under applicable statutes . . . **to proceed through the grievance handling process and to arbitration,** or similar administrative process in the case of actions under applicable statutes, **through final resolution, including any appeal rights parties may have** (a "Disposition") whether is an award (the "Award"), administrative decision ("Decision"), judicial decision ("Judgment"), or settlement. **To the extent that a Disposition of a Prepetition Action provides equitable relief, including reinstatement or reclassification, it shall not be subject to any challenge based on the application of the automatic stay.**[18] (Énfasis suplido).

Además, la Estipulación aclara que siempre y cuando el pleito en cuestión involucre únicamente un asunto de despido u otra acción disciplinaria, independientemente de los motivos para ello, el pleito no estará sujeto a la paralización del Título III de PROMESA. Específicamente, el tercer párrafo de la Estipulación dispone que: **"The parties further agree that any Prepetition Actions solely involving disciplinary discharge (including but not limited to any disciplinary discharge for unsatisfactory performance) or other types of discipline of a Commonwealth employee shall not be subject to the Title III Stay."**[19] (Énfasis suplido).

_____

[18]Estipulación, Íd., pág. 126.

[19]Íd., pág. 128.

Lo mismo reconoce la AAFAF en su Orden Administrativa, al afirmar que este tipo de pleito está eximido de la paralización automática y, para que continúe su marcha, no es necesario que las uniones sindicales soliciten el consentimiento del Gobierno de Puerto Rico a través del procedimiento de notificación establecido por la AAFAF. A esos fines, la Orden Administrativa aclara que:

> Los casos sobre hechos o conductas ocurridos antes del 3 de mayo de 2017 y que involucren solamente **amonestaciones o despidos o destituciones disciplinarias** (incluyendo aquellos despidos o destituciones por desempeño no adecuado o insuficiente), **no estarán sujetos a la paralización automática de PROMESA, a la "excepción automática" ni a la "excepción por notificación" descritas en esta Orden Administrativa, y podrán continuar con los trámites procesales ante los foros correspondientes.**[20] (Énfasis suplido).

Evaluemos el proceder del Tribunal de Apelaciones conforme al marco legal reseñado anteriormente.

### III

En este caso, la UGT ha alegado la ilegalidad de la destitución de la señora Colorado Suárez de su puesto como Agente Especial Fiscal I en el Departamento de Hacienda. En síntesis, reclama que esa acción contravino ciertas cláusulas del Convenio Colectivo suscrito con el Departamento de Hacienda, por lo que entiende procede reinstalar a la señora Colorado Suárez a su puesto. Toda vez que la CASP emitió un laudo de arbitraje confirmando la destitución en cuestión, la UGT acudió al Tribunal de Primera Instancia para impugnar su

---

[20] Orden Administrativa OA-2018-2, Íd., pág. 140.

validez. Sin embargo, el foro primario lo confirmó y fue así como la UGT llevó el caso hasta el Tribunal de Apelaciones.

Habida cuenta de que el 3 de mayo de 2017 el Gobierno de Puerto Rico presentó una petición bajo el Título III de PROMESA, el foro intermedio se vio precisado a examinar si este pleito estaba paralizado por dicha ley. A pesar de que resolvió inicialmente en la negativa, casi un año después, el Tribunal de Apelaciones emitió una Sentencia decretando la paralización y archivo administrativo del caso. En esa ocasión, concluyó que el pleito podía conllevar la erogación de fondos del caudal del Gobierno de Puerto Rico, por lo que correspondía a la Corte de Distrito autorizar su continuación en el foro local.

Sin embargo, no podemos ignorar que para la fecha en que el Tribunal de Apelaciones decidió paralizar y archivar este pleito, la Corte de Distrito **ya había aprobado** una Estipulación entre el Gobierno de Puerto Rico y varias uniones sindicales, incluyendo la UGT.[21] En ésta se acordó modificar la paralización automática del Título III de PROMESA respecto a ciertos tipos de pleitos entre las partes suscribientes.

_____

[21]La Estipulación fue suscrita por la American Federation of Teachers, AFL-CIO (AFT), la American Federation of State, County and Municipal Employees International Union, AFL-CIO (AFSCME), así como sus afiliadas locales. La International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) y la Service Employees International Union, AFL-CIO (SEIU) -a quien está afiliada la Unión General de Trabajadores de Puerto Rico (UGT)- también acordaron seguir los términos de la Estipulación. Véase In Re: Commonwealth of Puerto Rico, 17-03283 (LTS) (Dkts. 3166, 3955, 4832 y 7360).

Particularmente, se dispuso que los pleitos sobre quejas, agravios y arbitrajes tramitados al amparo de los convenios colectivos vigentes y que involucren solamente amonestaciones, despidos, o destituciones disciplinarias no estarán sujetos a la paralización automática de PROMESA. Más importante aún, tampoco hace falta el consentimiento del Gobierno de Puerto Rico -suplido a través del procedimiento de notificación establecido por la AAFAF- para que los pleitos de **esta índole** continúen su marcha ante los foros locales pertinentes.

No existe controversia de que estamos ante un pleito laboral sobre impugnación de laudo de arbitraje, tramitado por una unión sindical y al amparo de un Convenio Colectivo cobijado por la Estipulación.[22] Asimismo, el pleito tiene por objeto procurar la reinstalación de una empleada unionada que se alega fue ilegalmente destituida de su puesto como medida disciplinaria contraria a ese Convenio Colectivo. Al examinar estas particularidades a la luz del Derecho aplicable y el lenguaje de la Estipulación reseñada, es forzoso concluir que este caso pertenece a la categoría de pleitos que **no están**

---

[22]No ignoramos que el Convenio Colectivo suscrito entre la UGT y el Departamento de Hacienda, promulgado bajo la Ley Núm. 45-1998, está expresamente reconocido en la Estipulación ("[T]he Title III Stay is hereby modified solely to the limited extent necessary to permit matters arising from prepetition conduct **brought under the grievance and arbitration procedures in collective bargaining agreements** between the Commonwealth and the CBA Counterparties, or under applicable statutes, including but not limited to Law 184-2004, Law 32-1972, and **Act 45-1998**"). (Énfasis suplido). Estipulación, apéndice del certiorari, pág. 126.

**paralizados** en virtud de los acuerdos previamente aprobados por la Corte de Distrito y cuya continuación en nuestros foros locales no requiere de trámite ulterior.

Por consiguiente, no podemos coincidir con la determinación del foro recurrido, debido a que no se percató que este caso está sujeto a una estipulación que la Corte de Distrito había aprobado para levantar la paralización de ciertos pleitos en nuestros tribunales locales, incluyendo el de autos.  Ante ese cuadro, lo que le correspondía a dicho foro era regirse por lo estipulado y continuar atendiendo el recurso ante su consideración.

En ese sentido, suscribir el razonamiento del Tribunal de Apelaciones daría al traste con nuestros pronunciamientos en Lab. Clínico et al. v. Depto. Salud et al., supra, y Lacourt Martínez et al. v. JLBP et al., supra. Hoy le recordamos a todos nuestros tribunales que el ejercicio de la jurisdicción concurrente para conocer inicialmente si un pleito está o no paralizado bajo el Título III de PROMESA implica, por sus propios términos, el deber de tomar en cuenta **todas** las circunstancias puestas a su conocimiento que puedan incidir en su determinación. En este caso, se omitió que la estipulación entre el Gobierno de Puerto Rico y las uniones sindicales suscribientes forma parte integral de las fuentes de Derecho que los foros judiciales debemos observar en controversias de carácter laboral enmarcadas en las materias estipuladas voluntariamente por las partes y avaladas judicialmente por la Corte de Distrito.

**IV**

Por los fundamentos expuestos, resolvemos que el presente pleito no está paralizado por el Título III del Puerto Rico Oversight, Management, and Economic Stability Act, 48 USC sec. 2101 et seq. En consecuencia, revocamos la Sentencia del Tribunal de Apelaciones y le devolvemos el caso para que continúen los procedimientos de conformidad con lo aquí expuesto.

Se dictará Sentencia de conformidad.


                                        Luis F. Estrella Martínez
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Departamento de Hacienda<br><br>Recurrido<br><br>v.<br><br>UGT-Comité Timón de Agentes de Rentas Internas (COTIARI)<br><br>Peticionario | CC-2018-664 | *Certiorari* |

SENTENCIA

San Juan, Puerto Rico, a 21 de febrero de 2020.

Por los fundamentos expuestos, se resuelve que el presente pleito no está paralizado por el Título III del <u>Puerto Rico Oversight, Management, and Economic Stability Act</u>, 48 USC sec. 2101 <u>et seq</u>. En consecuencia, se revoca la Sentencia del Tribunal de Apelaciones y le devolvemos el caso para que continúen los procedimientos de conformidad con lo aquí expuesto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez, la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez concurren sin opinión escrita.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo